IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
TINA KAY FERREBEE,              )
                                )
           Plaintiff,           )
                                )
     v.                         )    1:19CV1139
                                )
ANDREW M. SAUL,                 )
Commissioner of Social Security,)
                                )
           Defendant.           )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Tina Kay Ferrebee, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 9, 11; see also Docket Entry 10 (Plaintiff's Brief); Docket Entry 12 (Defendant's Memorandum); Docket Entry 13 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for Defendant.

### I. PROCEDURAL HISTORY

Plaintiff applied for SSI (Tr. 155-64) and, upon denial of that application initially (Tr. 60-68, 81-84) and on reconsideration (Tr. 69-80, 87-91), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 97-98). Plaintiff, her attorney, and a vocational expert ("VE") attended

the hearing. (Tr. 30-59.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 12-25.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 153-54, 253-54), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings:

> 1. [Plaintiff] has not engaged in substantial gainful activity since July 5, 2016, the application date.
>
> 2. [Plaintiff] has the following severe impairments: obesity; status post patent foramen ovale; cerebrovascular accident; varicose veins; and ventricular septal defect (VSD).
>
> . . .
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 4. [Plaintiff] has the residual functional capacity to perform light work . . . except she is limited to frequent climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing, stooping, kneeling, crouching, and crawling; should avoid concentrated exposure to extreme heat, humidity, dust, odors, fumes, pulmonary irritants, unprotected heights and moving mechanical parts; is limited to simple routine tasks but not at a production rate pace, e.g., assembly line work; and is capable of sustaining concentration and pace for two-hour segments during a standard eight-hour workday.
>
> . . .
>
> 5. [Plaintiff] has no past relevant work.
>
> . . .

9. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

10. [Plaintiff] has not been under a disability, as defined in the . . . Act, since July 5, 2016, the date the application was filed.

(Tr. 17-25 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan,

3

993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to

4

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the [RFC] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th

---

[1] The Act "comprises two disability benefits programs. The Disability Insurance Benefits Program provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

Cir. 1999).[2]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.'  If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied."  Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled."  Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]."  Id. at 179.[3]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled.  See id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the

---

[2] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ."  Hunter, 993 F.2d at 35 (internal citations omitted).

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)."  Hines, 453 F.3d at 562-63.

6

analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65.  If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  Hines, 453 F.3d at 567.[4]

## B.  Assignment of Error

In Plaintiff's sole assignment of error, she maintains that "the ALJ inaccurately concluded [Plaintiff's] low back pain was a nonsevere impairment and did not discuss objective evidence supporting her pain."  (Docket Entry 10 at 8 (bold font and single-spacing omitted); see also Docket Entry 13 at 1-2.)  More specifically, Plaintiff challenges "[t]he ALJ['s] conclu[sion that Plaintiff]'s back pain was not a severe impairment because she did not have ongoing pain for twelve continuous months" (Docket Entry 10 at 9 (citing Tr. 17)), and points out that "her back pain started by June 2015 and continued through March 2018" (id. (citing

---

[4] A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

7

Tr. 296, 636); see also id. at 9-11 (describing evidence of Plaintiff's degenerative disc disease that the ALJ allegedly failed to acknowledge (citing Tr. 296, 430, 472, 599, 636, 697, 701, 725, 726, 733, 872, 875))).

Plaintiff additionally maintains that "[t]he ALJ's error was harmful because the combination of [Plaintiff]'s degenerative disc disease and obesity may limit her ability to perform even sedentary work" (id. at 13 (bold font and single-spacing omitted)), along with the fact that "the ALJ did not discuss[ and] thus apparently did not consider the combined impact of [Plaintiff]'s degenerative disc disease and obesity on her RFC" (id.; see also Docket Entry 13 at 4). In support of that argument, Plaintiff observes that she "is obese with a body mass index of 41," and that a "treatment provider noted that obesity contributed to [Plaintiff's] back pain," but contends that "[t]he ALJ only mention[ed Plaintiff]'s cardiovascular problems when discussing the impact of her obesity on her other impairments." (Docket Entry 10 at 14.) According to Plaintiff, "[h]ad the ALJ evaluated all the evidence of [Plaintiff]'s degenerative disc disease coupled with her obesity, it is not clear that she could perform even sedentary work." (Id. at 14-15.) Those assertions entitle Plaintiff to no relief.

"At step 2 of the [SEP], [the ALJ] determine[s] whether an individual has a severe medically determinable physical or mental impairment or combination of impairments that has lasted or can be expected to last for a continuous period of at least 12 months or

8

end in death." Social Security Ruling 16-3p, <u>Titles II & XVI: Evaluation of Symptoms in Disability Claims</u>, 2017 WL 5180304, at *11 (Oct. 25, 2017) ("SSR 16-3p") (emphasis added). An impairment fails to qualify as "severe" if it constitutes "only a slight abnormality . . . which would have no more than a minimal effect on an individual's ability . . . to perform basic work activities." Social Security Ruling 85-28, <u>Titles II and XVI: Medical Impairments that Are Not Severe</u>, 1985 WL 56856, at *3 (1985) ("SSR 85-28"). Applicable regulations further identify "basic work activities" as including:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.922(b). Plaintiff bears the burden of proving severity at step two. <u>Hunter</u>, 993 F.2d at 35; <u>see also</u> <u>Kirby v. Astrue</u>, 500 F.3d 705, 708 (8th Cir. 2007) ("Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." (internal citation omitted)).

Here, the ALJ did not err in classifying Plaintiff's "acute bilateral low back pain" as non-severe because "the record d[id]

9

not indicate that [Plaintiff] reported persistent ongoing symptoms of pain in [her low back] for a period of twelve continuous months." (Tr. 17.) Although, as Plaintiff argued (see Docket Entry 10 at 9), the record does reflect that Plaintiff first complained of back pain in June 2015 (see Tr. 296), and last complained of such pain in March 2018 (see Tr. 636), Plaintiff's arguments gloss over the fact that, in between June 2015 and March 2018, Plaintiff did not "report[] persistent ongoing symptoms of pain in [her low back] for a period of twelve continuous months" (Tr. 17 (emphasis added)).

The medical evidence of record documents the following reports of back pain by Plaintiff:

- 6/14/15: Plaintiff reported right-sided lower back pain that she likened to a "knot," her primary care physician, Dr. Ryan Camp Vann, found Plaintiff's "clinical picture suggestive of lumbar strain" (Tr. 296) and, at her next visit with Dr. Vann less than a month later, Plaintiff did not complain of back pain (see Tr. 303-04);

- 2/10/16: Plaintiff sought treatment for abdominal pain, blood in her urine, and lower back pain with spasm (see Tr. 378), Plaintiff displayed no tenderness in her thoracolumbar spine on examination (see Tr. 380), a CT scan of her abdomen and pelvis showed acute uncomplicated sigmoid diverticulitis (see Tr. 381) and degenerative changes most advanced at L5-S1 (see Tr. 383), Plaintiff received treatment for diverticulitis (see Tr. 380), and Plaintiff denied lower back pain at an emergency room visit for right leg pain on April 29, 2016 (see Tr. 388);

- 6/28/16: Plaintiff complained to her gynecologist of backache in connection with her menstrual cycle (see Tr. 456) and did not report back pain at a

10

> visit with a neurologist on July 8, 2016 (see Tr. 524);
>
> - 9/29/16: Plaintiff visited the emergency room for lower back pain over the preceding four to five days after working on the ground (see Tr. 872), but made no complaints of back pain at a trip to the emergency room on October 10, 2016 (see Tr. 837-71);
>
> - 12/8/16: Plaintiff reported increasing lower back pain to Dr. Vann, who found mild tenderness in Plaintiff's lumbar musculature (see Tr. 588) and diagnosed "lumbar strain" (Tr. 589), and Plaintiff did not complain of back pain at her next visit to Dr. Vann on January 30, 2017 (see Tr. 592);
>
> - 5/27/17: Plaintiff told Dr. Vann that she had experienced increased back pain a few days earlier which had decreased her mobility (see Tr. 609), Dr. Vann diagnosed "acute bilateral lower back pain with sciatica" (Tr. 610), an x-ray showed mild degenerative changes in Plaintiff's thoracolumbar spine (see Tr. 733), and Plaintiff did not complain of back pain at her next trip to see Dr. Vann on July 12, 2017 (see Tr. 721); and
>
> - 3/13/18: Plaintiff complained to Dr. Vann of lower back pain for about one week radiating to her flank with urinary frequency, urgency, and incontinence (see Tr. 636-37), Dr. Vann ordered urinalysis and a urine culture (see Tr. 636), and no further reports of back pain exist in the record (see Tr. 614-25).

The record thus documents just seven reports of lower back pain by Plaintiff over a period of approximately two years and nine months, only four of which occurred during the relevant period in this case from Plaintiff's application date of July 5, 2016 (see Tr. 155-64), to the date of the ALJ's decision on November 14, 2018 (see Tr. 25). Each of those seven reports represented an isolated occurrence of acute back pain rather than ongoing chronic pain (see Tr. 296, 378-83, 456, 588-89, 609-10, 636-37, 733, 872), and

11

several of the reports occurred in the setting of acute abdominal and/or genitourinary ailments that resolved with treatment (see Tr. 378-83, 456, 636-37). Moreover, although a CT scan of Plaintiff's abdomen and pelvis on September 30, 2017, documented "severe" degenerative disc disease at L5-S1 and moderate degenerative changes in Plaintiff's thoracolumbar spine (see Tr. 701), at that time, Plaintiff sought treatment for a diverticulitis flare and did not make any complaints of back pain (see Tr. 694-97). A diagnosis without accompanying symptoms causing functional loss does not suffice to establish a severe impairment. See Davis v. Commissioner, Soc. Sec. Admin., No. CIV. 12-0813, 2013 WL 1124589, at *1 (D. Md. Mar. 18, 2013) (unpublished) ("Under Fourth Circuit law, a mere diagnosis . . . does not establish a severe impairment absent some corresponding loss of function." (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986))); see also Foley v. Commissioner of Social Security, 349 F. App'x 805, 808 (3d Cir. 2009) ("A diagnosis alone, however, does not demonstrate disability."); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (holding that mere diagnosis of impairment says nothing about severity of condition).

Even if the ALJ should have deemed Plaintiff's back condition a severe impairment, any such error would remain harmless under the circumstances presented by this case. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to

12

remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). Where an ALJ finds at least one severe impairment, any failure to identify more generally cannot constitute reversible error, because, "upon determining that a claimant has one severe impairment, the [ALJ] must continue with the remaining steps in his disability evaluation." Maziarz v. Secretary of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987); accord Oldham v. Astrue, 509 F.3d 1254, 1256-57 (10th Cir. 2007); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Lauver v. Astrue, No. 2:08CV87, 2010 WL 1404767, at *4 (N.D.W. Va. Mar. 31, 2010) (unpublished); Washington v. Astrue, 698 F. Supp. 2d 562, 579 (D.S.C. 2010); Jones v. Astrue, No. 5:07CV452, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (unpublished). Moreover, a finding at step two that Plaintiff has a severe impairment does not require the ALJ to include any limitations arising from such impairment in the RFC:

> The determination of a "severe" impairment at step two of the sequential evaluation process is a de minimis test, designed to weed out unmeritorious claims. See Bowen v. Yuckert, 482 U.S. 137, [153] (1987). A finding of de minimis limitations is not proof that the same limitations have the greater significant and specific nature required to gain their inclusion in an RFC assessment at step four. See, e.g., Sykes v. Apfel, 228 F.3d 259, 268 n.12 (3d Cir. 2000).

Hughes v. Astrue, No. 1:09CV459, 2011 WL 4459097, at *10 (W.D.N.C. Sept. 26, 2011) (unpublished).

Here, having found Plaintiff suffered from at least one severe impairment (see Tr. 17), the ALJ proceeded through step three to

13

step four of the SEP and sufficiently addressed Plaintiff's back impairment (whether classified as severe or not) by including limitations on lifting, carrying, pushing, pulling, climbing, balancing, stooping, kneeling, crouching, and crawling in the RFC and dispositive hypothetical question to the VE.  (See Tr. 18, 57.) Significantly, beyond the equivocal assertion that "the combination of [Plaintiff]'s degenerative disc disease and obesity <u>may</u> limit her ability to perform even sedentary work" (Docket Entry 10 at 13 (emphasis added) (bold font and single-spacing omitted)), Plaintiff has not identified any <u>specific</u>, additional limitations that a finding of a severe back impairment would have compelled the ALJ to include in the RFC, let alone demonstrated that such additional limitations would have precluded her from performing any work existing in significant numbers in the national economy (see <u>id.</u> at 8-15).

Plaintiff's attempt to establish prejudice arising from the ALJ's non-severity finding by arguing that the ALJ failed to consider the combined effects of Plaintiff's back impairment and her obesity in formulating the RFC also falls short.  (<u>Id.</u> at 13-15.)  The ALJ included the following analysis of the impact of Plaintiff's obesity on her other impairments:

> <u>The [ALJ] has also considered [Plaintiff]'s obesity in accordance with Social Security Ruling [02-1p, Titles II and XVI: Evaluation of Obesity, 2002 WL 34686281 (Sept. 12, 2002) ("SSR 02-1p")].</u>  Specifically, it indicates <u>that obesity may have an adverse impact upon co-existing impairments</u>.  For example, obesity may affect the cardiovascular and respiratory systems, making it harder

14

>     for the chest and lungs to expand and imposing a greater burden upon the heart. Someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from arthritis alone. In addition, obesity may limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week or equivalent schedule. In this case, <u>[Plaintiff] has a body mass index of around 41, which indicates obesity. These considerations have been taken into account in reaching the conclusions [in the ALJ's RFC determination]</u>, and specifically, in this case, [Plaintiff]'s obesity has adversely affected her cardiovascular problems. However, as outlined above, her condition has been fairly stable since her surgery, and the record does not document substantial ongoing limitations that would preclude her from performing the demands of a reduced range of light work.

(Tr. 22 (emphasis added).) Thus, the ALJ clearly did consider the "adverse impact" that Plaintiff's obesity had upon her "co-existing impairments." (Id.) Although the ALJ did not ultimately find that Plaintiff's obesity adversely affected Plaintiff's non-severe low back pain (see id.), that does not equate to the ALJ's failure to <u>consider</u> Plaintiff's obesity and lower back pain in combination.

In sum, Plaintiff had not shown prejudicial error arising out of the ALJ's classification of Plaintiff's lower back pain as a non-severe impairment.

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment Reversing the Decision of the Commissioner of Social

15

Security (Docket Entry 9) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 5, 2021